bankrupt, and inquired if he thought he could collect it; to which Bray replied that he did not know. Martinez then said that he thought that Manning was about to be attached. Bray answered that he thought so too, and that he had come there to provide against it by making him sign a bill of sale.

The above are all the facts it is deemed necessary to mention. A clearer case of an illegal preference could hardly be presented. That the bankrupt was hopelessly insolvent cannot be disputed; and that the defendants had reasonable cause to believe him so is equally plain. Mr. Bray swears that he believed him to be solvent; that is, that if his crops turned out well, and if his farm could be sold for a considerable sum in excess of the mortgage (which, under the testimony, seems to have been highly improbable), and if his horses, farming implements, etc., brought fair prices, enough might have been obtained to satisfy all the indebtedness which Mr. Bray supposed he owed.

It is unnecessary to dwell upon the fact, that even if there had been more grounds for this conjecture or estimate than appear to have existed, the condition of the bankrupt would nevertheless have been, in legal contemplation, that of insolvency. He was certainly then, and for a long time previously had been, unable to pay his debts. From the time that the defendants had advanced the funds to enable him to settle with his creditors at sixty-six and two thirds cents on the dollar, his indebtedness then had been constantly increasing. They had taken from him a deed for his farm, an assignment of his lease, and even of a policy of insurance on his life for one thousand dollars. He had also placed in their hands a large quantity of grain, and they had obtained from him a bill of sale of his horses, farming implements, etc., the possession of which does not appear to have been transferred.

Shortly before obtaining the bill of sale in question in this suit, they had offered to reduce their claim by one thousand dollars, provided he could obtain five thousand dollars to pay them; and when the bill was executed it was insisted on with the full knowledge and for the avowed reason that attachments by other creditors were impending. They were not aware, it is true, of the debt to Woodsum, amounting to some three thousand dollars, but they knew there were debts due to creditors in Mayfield and Santa Clara, and these they, according to their own statement, agreed to pay to the amount of one thousand two hundred dollars (although the bankrupt demanded one thousand five hundred dollars) only in case the crop and other property produced six thousand dollars, a condition wholly inconsistent with a belief in the solvency of a man whom they were compelling to convey all the property he possessed, of every kind and description, including some articles exempt by law from execution.

Their own avowal, that their reason for demanding the transfer was to save the property from attachments which were about to be levied, is a confession that they intended to make the bankrupt put the whole of his property beyond the reach of his other creditors, and to secure for themselves the means of appropriating it exclusively to the satisfaction of the debt due them. It is precisely such transactions that the provisions of the bankrupt act, with respect to preferences, were intended to prohibit and avoid. Of the property conveyed to the defendants, only the wheat and the spring wagon appear to have come into their possession, or to have been retained by them. The quantity of wheat seems to have been in all, ninety-eight thousand and seventy-four pounds, which at two dollars and seventy-five cents per cental, amounts to two thousand six hundred and ninety-seven dollars and three cents; spring wagon, two hundred and thirty dollars, making two thousand nine hundred and twenty-seven dollars and three cents.

I have taken these figures from the brief of the counsel for the plaintiff. Their accuracy is not controverted in the brief filed on the part of the defendant. If any error in them can be pointed out it will be corrected. But if no suggestion to that effect be made, judgment for the sum of two thousand nine hundred and twenty-seven dollars and three cents. in gold coin, will be entered.

Some conversation occurred at the hearing with regard to expenses incurred by the defendants after the execution of the bill of sale in preparing the wheat for market. No mention is made of this in the brief of the defendants. If any such expenses as for threshing, sacking, hauling, etc., were incurred, they should be allowed so far as they contributed to enhance the value of the property conveyed to them.

═══════

## Case No. 17,999.

### In re WOODWARD et al.

[4 Ben. 102;[1] 3 N. B. R. 719 (Quarto, 177).]

District Court, E. D. New York. March, 1870.

#### PRIVILEGE OF COUNSEL—WITNESS.

A witness who claims to have acted as counsel for a bankrupt, cannot, on that ground, refuse to be sworn as a witness in the bankruptcy proceedings.

[In the matter of George Woodward and Julius C. Woodward, bankrupts.]

In this case, the assignee for the bankrupt, by his counsel, attended before the register, and one William McKeag attended as a witness, but refused to be sworn, on the ground that he had acted as counsel for the bankrupt, and was still his adviser.

The register decided as follows: "The

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

right to refuse to answer a question on the ground of privilege, does not warrant a refusal to be sworn as a witness. The privilege cannot be interposed until a question is asked which invades the privilege."

On request the register certified the question to the court.

BLATCHFORD, District Judge. The decision of the register is correct.

## Case No. 18,000.

### In re WOODWARD.

[8 Ben. 112; 12 N. B. R. 297; 1 N. Y. Wkly. Dig. 33; 7 Chi. Leg. News, 387.] [1]

District Court, E. D. New York.  May, 1875.

REGISTER IN BANKRUPTCY—SUMMONS OF WITNESS.

A summons to a witness to attend before a register in bankruptcy may be served outside the district but within 100 miles of the place where the witness is required to attend.

[Proceedings in the matter of William S. Woodward, a bankrupt.]

BENEDICT, District Judge.  A proceeding in bankruptcy having been commenced in this court, the question of the discharge of the bankrupt being before the court upon specification filed in opposition to the discharge, it was referred to a register in bankruptcy of this district to take and report to the court the evidence to be adduced by the respective parties upon the said issue.  Such reference being thereupon commenced, a summons in accordance with form No. 48 was issued, requiring one George S. Scott to attend as a witness in said proceedings before such register, at his office in the city of Brooklyn.  The summons was served upon Scott in the city of New York, where he resides.  Scott failed to attend in accordance with the summons, and thereupon application is made to the court to attach the witness for his failure so to attend.

The application is opposed, for the purpose of obtaining a determination of the question whether a witness is bound to regard a summons served upon him out of the district for which the register is appointed, requiring attendance before that register in a district where the witness does not reside.

The general rule undoubtedly is, that process does not run beyond the limits of the judicial district.  But to this there is a well-known exception in the case of witnesses. Section 876 of the United States Revised Statutes expressly provides that subpœnas for witnesses who are required to attend a court of the United States may run into another district.

The provisions of the bankruptcy laws confer upon a register in proper cases "all the

powers of the district court for the summoning and examination of witnesses."  In the present case the register before whom the witness was required to attend in the city of Brooklyn had been duly directed in pursuance of section 5001 to take the testimony in the proceeding described in the summons; and therefore by virtue of section 5002 the register had all the power of this court for the purpose of summoning and examining witnesses in said proceeding.

The witness, Scott, was therefore liable to be subpœnaed to attend before the register in this district, notwithstanding the fact that he resided out of the district, as it is conceded that he did not live more than 100 miles from the city of Brooklyn.  The summons served upon the witness had all the effect that would have followed due service of the ordinary subpœna in a civil case requiring that attendance of the witness before the court.  Unless, therefore, the failure to attend is excused, the right of the parties to an attachment cannot be denied.  Some facts, by way of excuse, are stated in the papers, and they are accompanied by expressions of entire willingness on the part of the witness to attend, if he could be legally required to do so.  I shall not, therefore, at this time, consider the matters offered in excuse, but shall postpone the examination of that question, to give the witness the opportunity of demonstrating the sincerity of those expressions by attending before the register at such reasonable time as may be fixed by the register for the next hearing on the proceeding referred to.

[For subsequent proceedings, see Case No. 18,001.]

## Case No. 18,001.

### In re WOODWARD.

[8 Ben. 563.] [1]

District Court, E. D. New York.  Nov., 1876.

OPPOSITION TO DISCHARGE—SPECULATOR IN STOCKS NOT A MERCHANT—CONCEALMENT OF PROPERTY—ADMISSION OF FICTITIOUS DEBTS.

1. W., a speculator in stocks who failed for a large sum and went into bankruptcy, applied for his discharge.  It was opposed on the grounds, that he was a merchant or tradesman and had not kept proper books of account; that he had concealed property—a horse and wagon —belonging to him at the time of filing his petition; and that he had admitted fictitious debts in making up his schedules and had falsely sworn thereto.  Held, that a speculator in stocks is not a merchant or tradesman within the meaning of the statute.

[Quoted in Ex parte Conant. 77 Me. 278.]

2. As the only proof of concealment of property was a statement made by the bankrupt two years after filing his petition in these words: "I now have a horse and wagon," the court would not hold, in a case involving millions of dollars, that it was meant that he owned the property

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.  1 N. Y. Wkly. Dig. 33, contains only a partial report.]

[1] [Reported by Robert D. Benedict, Esq., and Benj. Lincoln Benedict, Esq., and here reprinted by permission.]